PEOPLE *v.* THEODOROU.

1. CRIMINAL LAW—NATURE OF ACCUSATION—COURT RULE.

Defendant charged with armed robbery was informed concerning the nature of the accusation, in compliance with court rule, both at original arraignment where he stood mute and at rearraignment at which he pled guilty, when on both occasions an assistant prosecuting attorney informed the court in his opening statement that defendant was before the court on a charge of armed robbery, where his counsel had previously received a copy of the information and defendant had waived its reading on the first arraignment, where defendant who was 36 years old had previously been convicted of a criminal offense and had served time in prison (CLS 1961, § 750.529; GCR 1963, 785.3).

2. SAME—PLEA OF GUILTY—CONSEQUENCE OF PLEA—PUNISHMENT.

Court rule requiring that defendant pleading guilty be informed of the consequence of his plea does not require that he be informed of the possible punishment, and defendant who was informed of the maximum sentence possible on conviction of armed robbery cannot predicate reversible error on the assertion that the trial court did not properly inform him of the possible punishment (CLS 1961, § 750.529; GCR 1963, 785.3).

3. SAME—RESENTENCING—PRESENCE OF COUNSEL.

Presence of defendant's counsel was required at resentencing to correct an improper sentence imposed on conviction of armed robbery by plea of guilty, where he had not waived benefit of counsel, and a sentence imposed without the presence of counsel must be vacated and the cause remanded for imposition of sentence with counsel present (CLS 1961, § 750.529).

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law §§ 325, 327, 454, 486, 487.
[2] 21 Am Jur 2d, Criminal Law § 487.
[3] 21 Am Jur 2d, Criminal Law §§ 528, 529.

Appeal from Kalamazoo; Van Valkenburg (Wade), J. Submitted Division 3 December 6, 1967, at Grand Rapids. (Docket No. 3,232.) Decided March 28, 1968.

George G. Theodorou was convicted of armed robbery. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Donald A. Burge,* Prosecuting Attorney, and *John E. Fitzgerald,* Assistant Prosecuting Attorney, for the people.

*Stapleton, Adams, Burgie, Kidston & Crocker,* for defendant.

HOLBROOK, P. J. Defendant was charged in an information with committing armed robbery in the city of Kalamazoo, October 24, 1965, contrary to statute.[1] The record discloses that defendant was represented by counsel at his arraignment November 15, 1965. The assistant prosecuting attorney made the following opening statement:

"Your Honor, George G. Theodorou is before the court for arraignment on a charge of armed robbery. He is represented by Attorney Doukas. * * * Mr. Doukas has been furnished a copy of the information."

Defendant upon being questioned by the court, stated he had discussed with his attorney the nature of the proceedings, desired to waive the reading of the information and stood mute. A plea of not guilty was entered by the court. On March 17, 1966, defendant was rearraigned. The assistant prosecuting attorney made the following opening statement:

---

[1] CLS 1961, § 750,529 (Stat Ann 1968 Cum Supp § 28.797).

"If it please the court, George Theodorou is before the court at this time under a charge of armed robbery, file No. 15–130C. Mr. Theodorou was before this court on November 15, 1965, at which time he stood mute. A not guilty plea was entered for him. He is represented by attorney Doukas, who is present in the courtroom at this time. I am led to believe there is going to be a change of plea in this matter."

Thereupon defendant's counsel stated:

"That is correct, Your Honor. We wish to change our plea from standing mute to entering a plea of guilty to this charge. I discussed this matter with Mr. Theodorou over a period of months. I also discussed this matter with him today in the presence of his various relatives and friends very carefully. I informed him of his rights and the various problems he was confronted with, and it is my understanding that he is entering this plea of guilty freely, without any promises whatsoever, and of his own free will."

The following colloquy took place:

"*The Court.* Mr. Theodorou, you have heard the statement of your attorney—is that correct?

"*The Defendant.* Yes, sir.

"*The Court.* Then I take it that what you desire to do is withdraw your former plea and you wish to plead guilty to this offense as charged, is that correct?

"*The Defendant.* Yes, sir.

"*The Court.* All right. We will need to have some of the facts on the record as to what happened. Of course, I know what happened, but at the same time, we had better have a record here, so will you make a brief statement of what happened on this occasion?

"*The Defendant.* I don't know where to start at.

"*The Court.* Well, start at the beginning. Just tell us what happened, in your own words.

"*The Defendant.* Well, I come over to Kalamazoo on Sunday, October 24th I think it was, I don't know,

Russell Pulliam was over here from Lansing and
he was to see Dale Humes here in Lansing—I mean
here in Kalamazoo, and then he was going to Cali-
fornia.  We went to Humes' home and then later
they wanted some beer, so we drove down to a beer
store that Dale Humes knew about.  We got down
there and parked the car and Russell and Dale went
in to get some beer—Dale went in to get some
beer and then Russell got out of the car to go get
some soft drinks for the children we had with us.
And then they come back to the car and said that
they had planned to rob this place two years before
that when they were in Jackson prison.

"*The Court.*  The place you're talking about is
what place?

"*The Defendant.*  I think its the Ideal Beer Store.
I'm not sure of that.

"*The Court.*  Is that located at 557 Portage?

"*The Defendant.*  Somewhere in there.

"*The Court.*  Does that sound correct?

"*The Defendant.*  Yes.

"*The Court.*  All right, proceed.

"*The Defendant.*  And we drove around a while
and Dale was trying to steal a car for this robbery,
and after checking 15 or 20, something like that,
why, he gave it up.  And Russell said, 'Well, we'll
use your car.'  I refused at first, but I was due back
at Dale's house where Ruth McDonald was waiting
for me, so I didn't argue too much with him about
it.  So we parked out in front of the place and, well,
we went in and robbed it.  * * *

"*The Court.*  Now, you went into this store.  Was
it open at that time and you went in and robbed it, is
that what happened?

"*The Defendant.*  Yes, sir.

"*The Court.*  You didn't break in?

"*The Defendant.*  No.

"*The Court.*  You went in and held these fellows
up over there, is that correct?

"*The Defendant.*  Correct.

"*Mr. Dalzell.* If it please the court, you might ask who was in the store when the robbery took place, which of these three men were in the store?

"*The Court.* All right, can you answer that?

"*The Defendant.* Yes. We were all three in the store. * * *

"*The Court.* And then what happened—what did you carry out?

"*The Defendant.* Nothing, I guess, except Russell got the money, I'm not sure.

"*Mr. Dalzell.* Who had the guns?

"*The Defendant.* Russell had them originally.

"*Mr. Dalzell.* I mean in the store, who was carrying them?

"*The Defendant.* Let's see. Dale—let's see—Russell had one and Dale had one for a while and then he handed it to me.

"*Mr. Dalzell.* Were there any clerks in the store?

"*The Defendant.* I think so, yes, two or three.

"*Mr. Dalzell.* What did you tell the clerks?

"*The Defendant.* I don't remember what—Russell was talking. I don't remember what he said.

"*Mr. Dalzell.* About what did he say, as you remember?

"*The Defendant.* I think he just asked where the money was at.

"*Mr. Dalzell.* Did they see the guns?

"*The Defendant.* I think so, I believe. * * *

"*Mr. Dalzell.* Once it started inside the store you knew what was going on?

"*The Defendant.* Yes.

"*Mr. Dalzell.* And you had a gun in your hand some of this time?

"*The Defendant.* Well, I was handed a gun, yes.

"*Mr. Dalzell.* While you had a mask on?

"*The Defendant.* Yes. Russell had the only pistol that was loaded.

"*The Court.* Well, at any rate, after you eventually got in there you knew you were robbing the place?

"*The Defendant.* Yes, sir. * * *

"*The Court.* Have you served any prison time before?

"*The Defendant.* Yes, sir.

"*The Court.* Can either of you gentlemen tell me what the max is on this?

"*Mr. Dalzell.* Life.

"*The Court.* Or any term of years?

"*Mr. Dalzell.* Or any term of years. * * *

"*The Court.* Have you served time in Michigan?

"*The Defendant.* Yes.

"*The Court.* With that past record, and you have heard the statement as to the maximum imprisonment, I would say that there's a very good possibility that you're going back to prison.

"*The Defendant.* Yes, sir.

"*The Court.* You realize that?

"*The Defendant.* Yes, sir."

Before sentence, the defendant and his counsel talked privately with the trial judge in chambers. After this private conference, the following took place in open court:

"*The Court.* Mr. Doukas, is there anything you wish to say for the record?

"*Mr. Doukas.* No, your Honor. We discussed this matter thoroughly and the court is informed."

The court sentenced the defendant on the 25th day of April, 1966, to "a maximum term of life and not less than 20 years from and including this date." Because the sentence was invalid under CLS 1961, § 769.9 (Stat Ann 1968 Cum Supp § 28.1081), a petition by the prosecuting attorney was filed and the court ordered the defendant to be returned for the purpose of correcting sentence. On July 8, 1966, defendant was resentenced by the court to a term of not exceeding 40 years and not less than 20 years from and including the date of arrest, October 24, 1965. Defendant's counsel was not informed of the

resentencing hearing nor was defendant asked if he desired counsel to be present.

Defendant appeals to this Court from the order accepting his plea of guilty entered March 17, 1966, and judgment entered July 8, 1966. The following 3 questions are presented for review:

(1) Did the trial court inform defendant of the nature of the accusation against him prior to acceptance of his plea of guilty?

(2) Did the trial court inform defendant of the consequence of his plea of guilty prior to sentence?

(3) Did the failure to inform defendant's counsel of the resentencing hearing constitute reversible error?

Defendant asserts that the trial court failed to inform him of the nature of the accusation prior to acceptance of his plea of guilty, contrary to GCR 1963, 785.3. In the instant case, defendant was represented by counsel at the original arraignment where he stood mute and also at the rearraignment at which he pled guilty. Defendant was informed concerning the nature of the accusation on both of these occasions, *i.e.,* when it was stated that George G. Theodorou was before the court for arraignment on a charge of armed robbery. His counsel had previously received a copy of the information and defendant waived its reading on the first arraignment. The defendant was 36 years of age and had previously been convicted of a criminal offense and served time in prison. His previous criminal record and answers to questions after entering his plea of guilty indicate to this Court that he was not lacking in understanding as to the nature of the offense in which he rendered his plea. The trial judge was careful to ascertain that defendant actually committed the offense and the circumstances surrounding the transaction. The statements made by defendant's counsel in open court are clear and give

further support that defendant was properly informed and understood the nature of the accusation. *People* v. *Steele* (1966), 4 Mich App 352.

In defendant's second question it is asserted that the trial court did not properly inform him of the possible punishment. In the case of *People* v. *Charles A. White* (1967), 8 Mich App 220, it was determined that "consequence of plea" does not refer to punishment. In this case defendant was informed of the maximum sentence possible. We find no error in this regard.

In defendant's third question it is claimed that the resentencing of defendant by the court at a time when his counsel was not present without an effective waiver is contrary to the requirements of due process. In the case of *People* v. *Dye* (1967), 6 Mich App 217, it is stated in part on pp 220, 221 as follows:

"A recent Minnesota case, *State, ex rel. Searles,* v. *Tahash* (1965), 271 Minn 304, 309 (136 NW2d 70, 74), citing from *Batson* v. *United States* (CA 10, 1943), 137 F2d 288, 289, stated:

" 'Many considerations influence the length of a sentence which is to be imposed, and a defendant should have the opportunity to have his attorney present any mitigating circumstances to the court for its consideration in determining the weight of the sentence.'

"In *Martin* v. *United States* (CA 5, 1950), 182 F2d 225, 227, it was held that 'the very nature of the proceeding at the time of the imposition of sentence makes the presence of defendant's counsel at that time necessary if the constitutional requirement is to be met.' The court had reference to the need for counsel at that stage to determine the advisability of an appeal and to present explanatory or extenuating facts which might influence the sentence. No showing of actual prejudice was required. *Moore* v. *Michigan* (1957), 355 US 155 (78 S Ct 191, 2 L Ed

2d 167), also made comment on the aid of counsel at sentencing to establish facts and make arguments in mitigation of the sentence, adding that the right to counsel is not confined to representation at trial. To like effect is *Thomas* v. *Hunter* (CA 10, 1946), 153 F2d 834. We conclude that sentencing is a critical stage of a criminal proceeding and, absent waiver, counsel's presence is required."

Also, see *People* v. *Jones* (1967), 6 Mich App 221.

We conclude that at the resentencing of defendant, at a time when he had not waived benefit of counsel, counsel's presence was required.

The conviction is affirmed. The sentence of the trial court is vacated and the cause remanded for imposition of sentence with defendant's counsel present.

BURNS and J. H. GILLIS, JJ., concurred.